UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

CHARLES DOUGHERTY,
   Plaintiff,

vs.              CIVIL NO. 2:07-CV-12449

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,  DISTRICT JUDGE JULIAN ABELE COOK
   Defendant         MAG. JUDGE. STEVEN D. PEPE
_____/

**REPORT AND RECOMMENDATION**

**I. BACKGROUND**

Charles Dougherty brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for Summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

  **A. Procedural History**

On January 16, 2003, Plaintiff applied for DIB alleging disability since November 28, 1991, based on lower back pain and a tumor on his cervical spine (R. 45-48, 60). In his original request for benefits, he alleged a disability date of February 22, 1990 but after a decision by the Agency finding that he was not disabled through November 27, 1991, he amended the onset date to be November 28, 1991 (R.45, 48). His claim was denied upon initial review and a hearing was scheduled for July 25, 2005 at Plaintiff's request (R. 28-35). Because he failed to appear at

1

the hearing, the Social Security administrative law judge ('ALJ") dismissed (R. 132-37). The Appeals Council vacated the order and remanded for further proceedings (R. 132-34, 138-45).

A second hearing was scheduled for August 15, 2006 before ALJ John A. Ransom at which Plaintiff appeared represented by attorney Mikel Lupisella (R. 425). Vocational Expert (VE) Timothy Shaner also testified. On October 15, 2006, ALJ Ransom decided Plaintiff was not disabled from November 28, 1991, through March 31, 1996, his last date insured (R. 49), because despite his impairments, he could perform a limited but significant number of sedentary, unskilled jobs identified by Vocational Expert Shaner (R. 13-22). This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (R. 6-8).

B.     **Background Facts**

1.     *Plaintiff's Testimony and Statements*

Plaintiff was 45 years old at the time when his period of disability insurance expired (R. 36). Plaintiff was considered a "younger person" for all relevant dates. *See* 20 C.F.R. § 404.1563(d). Plaintiff attended high school through eleventh grade and later received a general equivalency diploma (G.E.D.) (R. 426). In the past, Plaintiff worked as a production assembler until he injured his back in 1974, thereafter he worked sporadically until 1990 (R. 68,78). Plaintiff's personal activities include mowing the grass, driving, running errands, laundry and cleaning the floors (R. 162-5). He testified that at the onset date, he lived in a one-story home with his wife and children who did the shopping and yard work (R. 427, 432).

Plaintiff described his back and leg pain to be constant, alleviated somewhat with Naprosyn, a prescription, non-steroidal anti-inflammatory pain medication (R. 427-8). The

medication, however, made him tired (R. 428). He had trouble sleeping at night moving from place to place, sometimes sleeping in bed, on the couch or in his recliner with his feet elevated (R. 428). He required two naps a day of 40-60 minutes in duration (R. 428-29). He testified that he could sit, stand and walk for about 15-20 minutes at a time (R. 429). He had difficulty bending at the waist, pushing and pulling but was able to do stairs with the assistance of a handrail (R. 428-29).

## 2. *Medical Evidence*

### *a. Period Prior to Plaintiff's Alleged Date of Disability Onset*

A September 19, 1990, lumbar myelogram showed narrowing of the lumbar spine at L4-L5 (R. 91). The computed tomography (CT) study showed bulging discs at L3-L4, L4-L5 and L5-S1 suggesting mild facet arthritis with no evidence of a definite herniated disc (R. 91).

On December 18, 1990, Barbara D. Chapman, D.O., evaluated Plaintiff's back condition concluding that it was unchanged (R. 93-97). She renewed his prescription for Naprosyn and Flexeril. She followed up by letter with Plaintiff's chiropractor, Richard Chaney, stating that the pain medication along with his treatment constituted the appropriate means of managing his case (R. 94). She wanted Plaintiff to return to the office in about three months or sooner if problems occurred. Plaintiff did not return to her office until November 14, 1995, five years later (R. 93).

On September 13, 1991, Mark A. McQuillan, M.D., wrote a letter to Plaintiff's employer indicating that he had examined Plaintiff for a "Permanent Disability Determination" and "found him to be totally and permanently disabled" (R. 401-02). Dr. McQuillan reported that Plaintiff had "used medications, physical therapy, injections, TENS unit, etc." and had "poor relief" (R. 402). According to Dr. McQuillan, Plaintiff was "muscular" and retained full motor strength (R.

3

401). Dr. McQuillan stated that Plaintiff was "very uncomfortable seated and ha[d] a lot of difficulty getting from the exam table to the chair and back again" (R. 401). He stated Plaintiff had "almost zero" lumbar flexion and had a lot of pain while walking (R. 401). Plaintiff's reflexes were normal (R. 401).

### b. *Period of Disability – November 28, 1991 to March 31, 1996*

During the period of disability, Plaintiff sought treatment with his chiropractor, Richard Chaney (R. 112-16). Plaintiff reported "mild" or "moderate" pain in his legs and lower back (R. 112-16). Dr. Chaney noted that Plaintiff estimated that his pain had lessened or improved with treatment (R. 112-16). Dr. Chaney made no mention of any restrictions in Plaintiff's physical activities (R. 112-16).

In November 14, 1995, Dr. Chapman noted that a July 1995 magnetic resonance imaging (MRI) study showed degenerative changes, possible disc protrusion and spinal stenosis in Plaintiff's lumbar spine (R. 93, 108). Dr. Chapman observed that Plaintiff could walk on his heels and toes and touch the floor with his fingertips (R. 93). They discussed options including lumbar injections, physical therapy and medication (R. 93). On December 7, 1995, he received an injection to help control the pain (R. 93).

On June 6, 2003, J. Donald, Enhanced Examiner, completed a physical residual functional capacity assessment of Plaintiff's ability to perform work-related activities for the relevant period (R. 124-131). He found that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for at least two hours in an eight-hour workday even with the limitation of lower extremity numbness, sit for six hours during the workday and had no limitations on the use of his hands. Further, J. Donald stated Plaintiff

4

should never climb ladders, rope or scaffolds or be exposed to extreme hot or cold but could on occasion climb ramps or stairs. Relying on Dr. Chapman's findings, J. Donald concluded that Plaintiff could return to work at the light-medium exertional level (R. 130).

     **3.**     ***Vocational Evidence***

VE Shaner described Plaintiff's production assembler position as medium and unskilled work (R. 158).

ALJ Ransom posed the following hypothetical to VE Shaner – assume an individual of the same age, education, and work experience as the Plaintiff, with the following limitations: the individual can perform sedentary work with a sit/stand option at will, no repetitive bending, twisting or turning, no repetitive pushing, pulling, stripping or grasping with the right extremity, no air or vibrating tools, no overhead work, no prolonged or repetitive rotation, flexion or extension of the neck (R. 433-34).

VE Shaner stated that he believed that such an individual could perform unskilled, sedentary jobs. These jobs exist at an incidence of 300 in Michigan's lower peninsula, examples of these jobs being 1,400 order clerk, 2,000 inspector, 1,500 information clerk (R. 434).

In response to a similar hypothetical of such an individual and assuming all of Plaintiff's alleged limitations and impairments to be credible, VE Shaner believed that such a worker could not work (R. 433). The VE also testified that if a worker needed to be absent for more than one day per month that would eliminate full-time competitive employment (R. 434).

     **4.**     ***ALJ Ransom's Decision***

ALJ Ransom found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 1996, and that he had not engaged in substantial gainful activity

5

since his amended, alleged onset date of November 28, 1991 (R. 18). He found that Plaintiff's status degenerative disc disease was a "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 20).

ALJ Ransom found that Plaintiff retained the RFC to perform a limited range of unskilled sedentary work with restrictions of a sit/stand option at will, no repetitive bending, twisting or turning, no repetitive pushing, pulling, stripping or grasping with the right extremity, no air or vibrating tools, no overhead work, no prolonged or repetitive rotation, flexion or extension of the neck (R. 19). Considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform (R. 21).

The ALJ found that Plaintiff's allegations regarding his pain and functional limitations were not totally credible (R. 20). The impairment could produce the alleged symptoms but no to the intensity, persistence and limiting effects as alleged by Plaintiff (R. 20).

**II.     Analysis**

In his motion for summary judgment, Plaintiff argued that (1) ALJ Ransom improperly assessed Plaintiff's credibility, effects, symptoms and limitations of degenerative disc disease; (2) ALJ Ransom failed to give proper weight to the opinions and assessments made by the Plaintiff's chiropractor; (3) ALJ Ransom failed to pose an accurate hypothetical to VE Shaner reflecting Plaintiff's impairments; and (4) The ALJ's decision was not supported by substantial evidence (Dkt. # 12).

**A.     Standards of Review**

Plaintiff must establish that he became disabled under Title II of the Act prior to March 31, 2003, the date his insured status expired. *See* 42 U.S.C. § 416(I); 20 C.F.R. §§ 404.131(a), 404.320(b)(2)*; Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do his previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering his age, education, and work experience. *See id.* § 423(d)(2)(A).

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. *Id*. If the Commissioner's decision is supported by substantial

evidence, a reviewing court must affirm. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform. *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

**B.**     **Factual Analysis**

   **I. Plaintiff's Credibility at Issue**

Plaintiff challenges the Commissioner's decision arguing that the ALJ's credibility finding is not supported by substantial evidence because it fails to adequately assess Plaintiff's subjective estimation of his pain and limitations due to degenerative disc disease. Subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)) (*See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Secretary,* 801 F.2d 847, 852 (6th Cir. 1986) (Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain). The issue of a claimant's credibility regarding subjective complaints is largely within the scope of the ALJ's fact finding discretion – the Commissioner's "zone of choice" – if adequately explained and supported by the record.

The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ must, however, do more than say the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.

9

ALJ Ransom had substantial evidence to discredit Plaintiff's testimony. ALJ Ransom measured Plaintiff's testimony against the objective medical evidence, the claimant's daily activities, the location, duration, frequency and intensity of his pain, precipitating and aggravating factors, use of medications, treatment other than medications and other measures used to relieve pain (R. 19-20). Based on his comparison of his claims with the above mentioned factors, ALJ Ransom found Plaintiff's testimony not "entirely credible." (R. 20). There was no objective evidence or treatment notes from the Plaintiff's treating physician to support Plaintiff's allegation of severe back pain radiating into the legs, with numbness in the right leg and foot and feeling that it was on "fire" or allegations of numbness of the right side from the waist up, right shoulder pain and difficulty using the right hand.

Plaintiff argues that the ALJ did not adequately explain the reasons for finding that his claims of disability were not entirely credible (Dkt. #12, 10-13). The ALJ reviewed all of the evidence in the record and clearly set forth a number of considerations that provided the bases for his assessment of the overall limitations caused by Plaintiff's impairments and the credibility of his disability claim.

Notably, the objective medical evidence does not support the Plaintiff's purported symptoms. To be fair, in nearly all cases reaching this court, there is no objective medical evidence supporting Plaintiff's claims of pain, nor is it required.[1] 20 C.F.R. § 404.1529(a) makes it clear that "statements about your pain or other symptoms will not alone establish that you are

---

[1] Neither the statute nor the regulations require a claimant to prove his degree of pain and limitations by objective medical evidence. *See, e.g.*, 20 C.F.R. § 404.1529(c)(2) and *Duncan v. Secretary of HHS*, 801 F.2d 847, 853 (6th Cir. 1996).Yet, 20 C.F.R. § 404.1529(a) makes it clear that"statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain symptoms alleged."

disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain symptoms alleged." Plaintiff's orthopedic specialist, Dr. Chapman, reported that Plaintiff could walk on his heels and toes, touch the floor with his fingertips, and had a tandem gait (R. 19, 93). In September 1990, Dr. McQuillan, examined Plaintiff and reported that he was "muscular" and retained full motor strength and normal reflexes (R. 401). *See* 20 C.F.R. § 404.1529(c)(2) (reduced joint motion, muscle spasm, sensory deficit or motor disruption are relevant indicia of pain); *Tyra v. Secretary of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). Furthermore, the conservative treatment measures as recommended by Dr. Chapman during the relevant time period also supported the ALJ's conclusion that Plaintiff's claims of total debility were not credible. For example, the ALJ noted that Dr. Chapman indicated that the use of Flexeril (a muscle relaxant) and an NSAID, coupled with chiropractic adjustments were an appropriate treatment regimen for the level of symptoms Plaintiff was experiencing (R. 19, 94). *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (ALJ considers types of treatment used and their effectiveness when assessing severity of limitations caused by claimant's impairments). As the ALJ noted, Dr. Chapman did not suggest that a more aggressive treatment regimen, such as surgery or treatment at a chronic pain clinic, was necessary (R. 19). *See* 20 C.F.R. § 404.1529(c)(3), (4). Additionally, Dr. Chapman did not place any restrictions on Plaintiff's physical activities prior to March 31, 1996 (R. 19).

In Dr. Chaney's contemporaneous office notes Plaintiff himself characterized his back and leg pain as only "mild" or "moderate" (R. 112-16). *See* 20 C.F.R. § 404.1529(c)(4) (ALJ considers claimant's statements when assessing nature and severity of limitations caused by

11

impairments).[2]

Plaintiff tries to make much of Dr. Chapman's September 6, 1990, letter concluding that there was objective physical evidence which support the Plaintiff's complaints. Defendant contends that medical opinion evidence that makes conclusions reserved for the Commissioner is not afforded any special significance. An ALJ need not attach any significance to a conclusory opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 404.1527(e)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner"); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Thus too, Dr. McQuillan's pre-onset September 1991 "opinion" that Plaintiff was "totally and permanently disabled" in no way binds the ALJ to make a finding in accordance with the doctor's conclusion.

Furthermore, the Commissioner issued an earlier decision that Plaintiff was not disabled through November 27, 1991 (R. 48). The medical evidence submitted in support of Plaintiff's claim that predates his onset date does little to shed light on his condition during the years from 1991 to 1996.

While there are medical reports showing a significant disc problem, there is also evidence that Plaintiff could manage his personal care needs and is capable of doing several activities on a daily basis such as driving, shopping, sweeping, mopping and mowing the grass (R. 162-65). *See*

---

[2]Plaintiff erroneously posits that chiropractor Chaney is a treating physician and is therefore entitled to deference. Under the regulations, only "acceptable medical sources" are entitled to the deference accorded a treating physician. *See* 20 C.F.R. § 404.1527(a)(2). Chiropractors are not considered "acceptable medical sources." *See* 20 C.F.R. § 404.1513(d)(1); *Walters*, 127 F.3d at 530.

12

20 C.F.R. § 404.1529(c)(3)(I) (ALJ considers the claimant's daily activities in determining functional restrictions due to pain); *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 532 (6th Cir. 1997).

Plaintiff alleges that he needed to elevate his legs above his waist for three hours of every eight-hour work day. (Dkt. #12, ps.. 8-12). Nothing in the medical record supports the medical necessity of this accommodation.

Plaintiff posits the additional argument that ALJ Ransom failed to account for his medications and their side effects during the period of disability (Dkt. #12, p. 11). The record contains no contemporaneous notes that document any complaints by Plaintiff to his care providers.

Plaintiff also asserts that the ALJ should have found him disabled based on his testimony that he was in constant pain during the relevant time period. Dr. Chapman and Dr. Chaney's contemporaneous office notes undermine the testimony Plaintiff provided more than ten years after the relevant period. Dr. Chaney's contemporaneous office notes revealed complaints of only "mild" or "moderate" pain (R. 112-16). Plaintiff told Dr. Chaney that he felt better with treatment (R. 112-16). *See id.*; 20 C.F.R. § 404.1529(c)(4) (ALJ considers claimant's statements when assessing nature and severity of limitations caused by impairments). Thus, even if Plaintiff's pain was constant, the ALJ reasonably concluded that his pain was not so severe as to disable him within the definition of the Social Security Act.

Even thought the ALJ had misgivings about Plaintiff's degree of pain estimation, he did find credible certain limitations and accommodated them accordingly. For example, Plaintiff testified that he had difficulty bending, and the ALJ found he could not perform repetitive

13

bending (R. 19, 429-30). Similarly, to the extent that Plaintiff complained of neck and right upper extremity problems, the ALJ accommodated his complaints by finding he could not do repetitive gripping or grasping with the right upper extremity, use air or vibrating tools, perform overhead work, or engage in prolonged or repetitive rotation, flexion or extension of the neck (R. 19).

The ALJ reviewed all of the evidence in the record and clearly set forth a number of considerations that provided the bases for his assessment of the overall limitations caused by Plaintiff's impairments and the credibility of his disability claim. Substantial evidence supports the ALJ's conclusion that Plaintiff's complaints of disabling pain were not fully credible.

### II. Hypothetical Question posed to Vocation Expert

Plaintiff claims that the ALJ asked the VE an incomplete hypothetical question because he never included all of Plaintiff's impairments and limitations. The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet the burden of showing that Plaintiff could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [he] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.* (citations omitted).

Contrary to Plaintiff's claim, the hypothetical questions ALJ Ransom asked the VE, and the corresponding answers the ALJ relied on, were adequate and proper because the hypothetical relied on included all of Plaintiff's substantiated impairments and resultant limitations. The ALJ may pose hypothetical questions to the VE which include only those limitations which the ALJ finds credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff's challenge to the hypothetical question is based in part on the ALJ's credibility finding discrediting Plaintiff's subjective estimation of his pain. For the reasons stated above, the ALJ had substantial evidence to reject the degree to which Plaintiff was limited by alleged pain.

Therefore, ALJ Ransom in his question to VE Stanley adequately described Plaintiff's physical condition. The ALJ proffered a hypothetical individual of the same age, education, and work experience as the Plaintiff, with the following limitations – sedentary work with a sit/stand option at will, no repetitive bending, twisting or turning, no repetitive pushing, pulling, stripping or grasping with the right extremity, no air or vibrating tools, no overhead work, no prolonged or repetitive rotation, flexion or extension of the neck (R. 433-34).

VE Shaner testified that such an individual could perform unskilled, sedentary jobs. These jobs exist at an incidence of 300 in Michigan's lower peninsula, examples of these jobs being 1,400 order clerk, 2,000 inspector, 1,500 information clerk (R. 434).

Based on the testimony of VE Shaner, a reasonable ALJ could conclude that there existed sufficient jobs which Plaintiff could perform even though he could not engage in his past relevant work. Therefore, it is recommended that ALJ Ransom's hypothetical question not be overturned.

**III.     RECOMMENDATION**

For the reasons stated above there is substantial evidence supporting ALJ Ransom's decision. IT IS RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

*Note:* any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: April 30, 2008  s/Steven D. Pepe
Ann Arbor, Michigan  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 30, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298